# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
|     Plaintiff/Respondent, | ) | |
| | ) | |
| vs. | ) | NO. 2:11-CR-170 |
| | ) |     2:15-CV-63 |
| TOMMY ROSSITER, | ) | |
| | ) | |
|     Defendant/Petitioner. | ) | |

## <u>OPINION AND ORDER</u>

This matter is before the Court on the Motion Under 28 U.S.C. Section 2255 To Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody, filed by Tommy Rossiter on February 20, 2015 (DE #400). For the reasons set forth below, the section 2255 motion is **DENIED** without hearing. The Clerk is **ORDERED** to **DISMISS** this case **WITH PREJUDICE**. The Clerk is **ORDERED** to distribute a copy of this order to Tommy Rossiter, #11869-027, Elkton FCI-FSL, Federal Correctional Institution (FSL), Inmate Mail/Parcels, P.O. Box 10, Lisbon, OH 44432, or to such other more current address that may be on file for the Defendant. Further, this Court declines to issue Defendant a certificate of appealability.


<u>BACKGROUND</u>

On October 20, 2011, an indictment was filed against Defendant, Tommy Rossiter ("Rossiter") and numerous co-defendants. Rossiter was charged with conspiracy to possess with intent to

distribute and distribute a quantity of a mixture and substance containing a detectable amount of heroin, in violation of 21 U.S.C. § 846 and 21 U.S.C § 841(a)(1). Rossiter entered into a plea agreement with the Government, and the agreement was filed with this Court on August 21, 2012. (DE #120). In it, Rossiter agreed to plead guilty as charged. (*Id.*, ¶ 7). The Government and Rossiter also reached certain agreements that were not binding on the Court. (*Id.*). Specifically, they agreed that if Rossiter continued to accept responsibility for his criminal conduct, he should receive a two point, and if eligible, an additional one point reduction in his offense level. (*Id.*, ¶ 7(c)(i)). Additionally, they agreed that the Government would recommend that the Court impose a sentence equal to the minimum of the applicable Guideline range. (*Id.,* ¶ 7(c)(ii)). Furthermore, the Government agreed to consider filing a motion for downward departure with the Court pursuant to Guideline section 5K1.1 and possibly 18 U.S.C. 3553(e). (*Id.,* ¶ 7(e)).

In exchange for these benefits, the plea agreement contained the following wavier:

> I understand that the law gives a convicted person the right to appeal the conviction and the sentence imposed; I also understand that no one can predict the precise sentence that will be imposed, and that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for my offense as set forth in this plea agreement; with this understanding and in consideration of the government's entry into

> this plea agreement, I expressly waive my
> right to appeal or to contest my conviction
> and my sentence imposed or the manner in which
> my conviction or my sentence was determined or
> imposed, to any Court on any ground, including
> any claim of ineffective assistance of counsel
> unless the claimed ineffective assistance of
> counsel relates directly to this waiver or its
> negotiation, including any appeal under Title
> 18, United States Code, Section 3742 or any
> post-conviction proceeding, including but not
> limited to, a proceeding under Title 28,
> United States Code, Section 2255[.]

(*Id.*, ¶ 7(f)).

Further, Rossiter agreed that his attorney had "done all that anyone could do to counsel and assist [him]," that he was offering his guilty plea "freely and voluntarily and of [his] own accord," that "no promises [had] been made to [him] other than those contained in [the] agreement," and that he had not been "threatened in any way by anyone to cause [him] to plead guilty in accordance with [the] agreement." (*Id.*, ¶¶ 10-11).

This Court held a change of plea hearing on September 4, 2012. (DE ##161, 363). When asked whether he was "fully satisfied with the counsel, representation, and advice given to [him] in this case by Mr. Holesinger as [his] attorney," Rossiter replied "yes, Your Honor." (DE #363 at 8). After Rossiter read through paragraph 7 of his plea agreement, the Court asked him whether he read it previously, understood it, agreed with it, and was asking the Court to approve it. (*Id.* at 10-11). Rossiter answered yes to each of these questions. (*Id.*). Rossiter acknowledged repeatedly that he

agreed with the individual and collective terms of the plea agreement and confirmed that he wanted to plead guilty under the agreement. (*Id.* at 10-14).

The Court informed Rossiter that for the count he was pleading guilty to, "the most that you could get would be 20 years in jail, a fine of up to $1,000,000 or a combination of both of those, up to life supervised release and a $100 special assessment," and Rossiter answered that he understood. (*Id.* at 14). Additionally, the Court advised Rossiter that the least he could get would be probation, no fine, and no supervised release, but that he would still have the $100 special assessment. (*Id.* at 14-15). Rossiter again indicated that he understood. (*Id.* at 15).

The Court also confirmed that Rossiter understood that the Court would ultimately decide his sentence and that neither the Government's recommendations nor the Guidelines were binding. (*Id.* at 15-16). This included clear notification that the Government's recommendation that Rossiter be sentenced to the minimum of the applicable guideline range was not binding on the Court. (*Id.* at 20-21).

The Court also discussed the cooperation provision of the plea agreement with Rossiter. (*Id.* at 21-25). Rossiter indicated he understood the risks of cooperating, and further understood that the Government could, based on his cooperation, file a motion under 5K1.1 seeking a sentence below the applicable sentencing guideline

calculation.  (*Id.* at 21-24).  It was further explained that, even if the Government filed a motion under 5K1.1, the Court has discretion to grant or deny the motion.  (*Id.* at 25-26).

During the hearing, this Court questioned Rossiter extensively about his voluntary waiver of his right to appeal, including the following excerpt from that colloquy:

> Q:   Let's go on to subparagraph (f).  That deals with appeals, Mr. Rossiter. In this case, you have acknowledged that I have the jurisdiction and authority to sentence you up to the maximum provided by the statute. Remember you and I talked about that?  That's the 20 years in jail, a fine of up to a million dollars or a combination of both of those, up to life supervised release and a $100 special assessment.  Do you understand that?
>
> A:   Right, Your Honor.
>
> Q:   Do you understand that the law gives all defendants a right to appeal their conviction and/or sentence in a case? Do you understand that?
>
> A:   Yes, Your Honor.
>
> Q:   In this case what you are doing is you're giving up all those rights for all practical purposes. There's some rights you can't give up, like jurisdiction.  For all practical purposes, you're giving up all of your rights to an appeal.  Do you understand that?.
>
> A:   Right, Your Honor.
>
> Q:   That includes incompetence of counsel except as it relates to this waiver and/or its negotiation.  Do you understand that?
>
> A:   Yes, Your Honor.
>
> Q:   Do you understand that the government is not

giving up any of their rights to an appeal?

        A:      Yes, Your Honor.

        Q:      You sure this is what you want to do?

        A:      Yes, Your Honor.

        Q:      Are you doing it knowingly and voluntarily?

        A:      Yes, Your Honor.

        Q:      Talk to your attorney before making the decision?

        A:      Yes, Your Honor.

        Q:      Did he answer all of your questions?

        A:      Yes, he did, Your Honor.

        Q:      Do you have any questions for the Court?

        A:      Not at this time, Your Honor.

        Q:      And are you asking me to approve it as part of the
                plea agreement?

        A:      Yes, Your Honor.

(*Id.* at 26-27).

    Rossiter was asked whether "anyone, including [his] own
lawyer, any lawyer for the government, any government agent or
anyone else made any other or different promises or assurance to
[him] of any kind in an effort to induce or cause [him] to enter a
plea of guilty in this case?" (*Id.* at 29). Rossiter indicated
that they had not. (*Id.*). He further indicated that his
willingness to plead guilty resulted from prior discussions with
both his lawyer and the Government's lawyer, and that noone
attempted to force him to plead guilty. (*Id.*).

On October 2, 2013, this Court sentenced Rossiter to imprisonment for 120 months. (DE ## 351-352). Rossiter appealed his sentence, but the appeal was later dismissed voluntarily. (DE ##353, 379).

Rossiter filed the instant motion under section 2255 on February 20, 2015, arguing that his counsel was ineffective regarding the waiver of his appeal rights and with regard to the plea agreement and sentencing phases of his case. (DE #400 at 4-5). More specifically, he argues that counsel misadvised him regarding his possible sentence, and did not raise appropriate objections to the presentence investigation report. In response, the Government contends that Rossiter's claims fail on the merits. (DE #424). This motion is fully briefed and ripe for adjudication.


DISCUSSION

Habeas corpus relief under 28 U.S.C. section 2255 is reserved for "extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). In order to proceed on a habeas corpus motion pursuant to 28 U.S.C. section 2255, a federal prisoner must show that the district court sentenced him in violation of the Constitution or laws of the United States, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. *Id.*

A section 2255 motion is neither a substitute for nor

recapitulation of a direct appeal. *Id.; Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds by Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994). As a result:

> [T]here are three types of issues that a section 2255 motion cannot raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal.

*Belford*, 975 F.2d at 313. Additionally, aside from demonstrating "cause" and "prejudice" from the failure to raise constitutional errors on direct appeal, a section 2255 petitioner may alternatively pursue such errors after demonstrating that the district court's refusal to consider the claims would lead to a fundamental miscarriage of justice. *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996).

In assessing Rossiter's motion, the Court is mindful of the well-settled principle that, when interpreting a pro se petitioner's complaint or section 2255 motion, district courts have a "special responsibility" to construe such pleadings liberally. *Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (a "pro se complaint, 'however inartfully pleaded' must be held to 'less

stringent standards than formal pleadings drafted by lawyers'")
(quoting *Haines v. Kerner*, 404 U.S. 519 (1972); *Brown v. Roe*, 279
F.3d 742, 746 (9th Cir. 2002) ("pro se habeas petitioners are to be
afforded 'the benefit of any doubt'") (quoting *Bretz v. Kelman*, 773
F.2d 1026, 1027 n.1 (9th Cir. 1985)).  In other words:

> The mandated liberal construction afforded to
> pro se pleadings "means that if the court can
> reasonably read the pleadings to state a valid
> claim on which the [petitioner] could prevail,
> it should do so despite the [petitioner's]
> failure to cite proper legal authority, his
> confusion of various legal theories, his poor
> syntax and sentence construction, or his
> unfamiliarity with pleading requirements."

*Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999) (habeas
petition from state court conviction) (alterations in original)
(quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).
On the other hand, "a district court should not 'assume the role of
advocate for the pro se litigant' and may 'not rewrite a petition
to include claims that were never presented.'"  *Id.*  Here, the
Court assessed Rossiter's claims with these guidelines in mind.


Waiver

Rossiter claims that his counsel was ineffective regarding the
waiver of his appeal rights.  The Seventh Circuit has recognized
the validity of plea agreement waivers and will enforce the waiver
unless there is a claim that the waiver was entered into
involuntarily or that the waiver was a result of the ineffective

assistance of counsel during the negotiation of the waiver.    In
*Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999), the
Seventh Circuit held that only two claims could be raised on a
section 2255 motion by an individual who waived his right to
appeal:    (1) the defendant received ineffective assistance of
counsel in negotiating the waiver; or (2) that the waiver was not
knowingly and voluntarily made.    *Jones* stated that courts should
be:

> [m]indful of the limited reach of this
> holding, we reiterate that waivers are
> enforceable as a general rule; the right to
> mount a collateral attack pursuant to § 2255
> survives only with respect to those discrete
> claims which relate directly to the
> negotiation of the waiver.

*Id*. at 1145.    In *Mason v. United States*, 211 F.3d 1065, 1069 (7th
Cir. 2000), the Seventh Circuit applied its holding in *Jones* to bar
an ineffective assistance of counsel claim that related only to the
petitioner's performance with respect to sentencing.    The Court
found that "[b]ecause the challenge has nothing to do with the
issue of a deficient negotiation of the waiver, [petitioner] has
waived his right to seek post-conviction relief."    *Id.*
Additionally, the Court stated that the following analysis should
be considered in determining whether a claim has been waived:

> can the petitioner establish that the waiver
> was not knowingly or voluntarily made, and/or
> can he demonstrate ineffective assistance of
> counsel with respect to the negotiation of the
> waiver?

*Id.*

It is undisputed that in his plea agreement, Rossiter waived his right to appeal or contest his conviction and sentence "to any Court on any ground, including any claim of ineffective assistance of counsel unless the claimed ineffective assistance of counsel relates directly to this waiver or its negotiation, including any appeal under . . . Title 28, United States Code, Section 2255." (DE #120, ¶7(f)). Nonetheless, the Government has not responded to Rossiter's claim that counsel was ineffective in regard to the waiver provision. This is likely the result of a change in Department of Justice Policy. *See* Office of the Deputy Atty Gen., Memorandum to all Federal Prosecutors: Dep't Policy on Waivers of Claims of Ineffective Assistance of Counsel (Oct. 14, 2014) *available at* http://www.justice.gov/sites/default/files/press-releases/attachments/2014/10/15/dept-policy-on-waivers-of-claims-of-ineffective-assistance-of-counsel.pdf (last visited Sept. 2, 2016). The DOJ's change in policy, however, did not alter the law, and in the Seventh Circuit, waivers such as this one remain enforceable. *See U.S. v. Roach*, 600 Fed.Appx. 472 (7th Cir. 2015)("And for existing waivers that would bar a claim of ineffective assistance, the Attorney General has simply directed that the government should decline to enforce the waiver to block that claim."); *United States v. Ohio*, Nos. 3:10-cr-39, 3:11-cv-236, 2015 WL 686416, at *3 (S.D. Ohio 2015)("The Deputy Attorney

General's Memorandum embodies a change in Department of Justice policy, not a change in the law that renders prior waivers of collateral attack invalid.").

Despite the lack of argument on this point from the Government, this Court is nonetheless satisfied that Rossiter knowingly and intelligently waived his right to seek post-conviction relief. *See, e.g., United States v. Davis*, 348 F. Supp. 2d 964, 966 (N.D. Ind. 2004) (finding, under a similar section 2255 waiver, that defendant knowingly and intelligently waived his right to file a section 2255 motion). As set forth by the Court earlier in this opinion, Rossiter repeatedly testified during his hearing that he was satisfied with his counsel's performance, that he was knowingly and voluntarily pleading guilty, and that he understood the charges against him and the possible sentence he was facing. To the extent that Rossiter now argues to the contrary, "[s]elf-serving statements offered after the plea hearing generally fall in the face of contradictory voluntary statements made by the defendant during a plea hearing - the latter are presumed to be true." *United States v. Mosley*, No. 93-1829, 1994 WL 503016, at *3 (7th Cir. Sept. 14, 1994) (citing, *inter alia, United States v. Scott*, 929 F.2d 313, 315 (7th Cir. 1991) ("To allow [defendant] to withdraw his plea because of secret expectations that he harbored in the face of his directly contradictory sworn testimony would undermine the strong societal interest in the finality of guilty

pleas.")).  As such, the Court is satisfied that he knowingly and intelligently entered into the plea agreement.

Furthermore, none of Rossiter's claims of ineffective assistance relate directly to the waiver or its negotiation.  He states that they do, but this is just a conclusory allegation unsupported by facts.  Instead, his claims relate to his counsel's alleged failure to be present when the plea agreement was signed, failure to accurately predict his sentence, and failure to object to certain provisions of the presentence investigation report. (DE #400-1).  Because Rossiter's plea agreement was entered into knowingly and voluntarily and Rossiter has not demonstrated that counsel was ineffective in negotiating the waiver provision of the plea agreement, each and every one of Rossiter's arguments are waived.

Rossiter's Claims Fail on the Merits

Even if the waiver did not bar Rossiter's claims of ineffective assistance of counsel, the claims would still fail on the merits.  Claims of ineffective assistance of counsel are governed by the 2-pronged test set forth in *Strickland v. Washington,* 466 U.S. 668 (1984).  To prevail on an ineffective assistance of counsel claim, the petitioner must first show the specific acts or omissions of his attorney "fell below an objective standard of reasonableness" and were "outside the wide range of professionally competent assistance." *Barker v. United States*, 7

F.3d 629, 633 (7th Cir. 1993) (quoting *Strickland*, 466 U.S. at 688, 690); *see also Hardamon v. United States*, 319 F.3d 943, 948 (7th Cir. 2003); *Anderson v. Sternes*, 243 F.3d 1049, 1057 (7th Cir. 2001). The second *Strickland* prong requires a petitioner to show prejudice, which entails showing by "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Regarding the deficient-performance prong, great deference is given to counsel's performance, and the defendant has a heavy burden to overcome the strong presumption of effective performance. *Strickland*, 466 U.S. at 690; *Coleman v. United States*, 318 F.3d 754, 758 (7th Cir. 2003) (citation omitted). A defendant must establish specific acts or admissions that fall below professional norms. *Strickland*, 466 U.S. at 690. If one prong is not satisfied, it is unnecessary to reach the merits of the second prong. *Id.* at 697.

The Seventh Circuit has held that "[o]nly those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ." *Canaan v. McBride*, 395 F.3d 376, 385-86 (7th Cir. 2005). Additionally, trial counsel "is entitled to a 'strong presumption' that his performance fell 'within the range of reasonable professional assistance' and will not be judged with the benefit of hindsight.'" *Almonacid v. United States*, 476 F.3d 518,

521 (7th Cir. 2007) (citing *Strickland*, 466 U.S. at 689).

Rossiter argues that his counsel was ineffective because he initially told Rossiter he would likely get probation or home arrest and later told Rossiter his sentence would not exceed five years. Rossiter, however, received a sentence of 120 months. In the plea bargaining context, a defendant must show that counsel did not attempt to learn the facts of the case and failed to make a good-faith estimate of a likely sentence. *United States v. Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005). "Thus, the question is whether these were 'mere inaccurate predictions' or whether they were something more invidious." *United States v. Martinez*, 169 F.3d 1049, 1053 (7th Cir. 1999).

Unquestionably, Rossiter knew what sentence he was potentially facing. He was advised of the possible penalties he was facing at his initial appearance on November 2, 2011 (DE #13). The plea agreement itself set forth Rossiter's possible penalties. (DE #120 at ¶7(b)). The Court advised Rossiter of the possible penalties in detail at the change of plea hearing, including the fact that this Court was not bound by the parties' recommendations and that he could receive a sentence up to the statutory maximum of 20 years. (DE #363 at 14-26). At the change of plea hearing, he also indicated that he had fully discussed the charges made against him with his attorney, and that he was fully satisfied with his attorney. (DE #363 at 8). Furthermore, he indicated that noone,

including his lawyer, had "made any other or different promise or assurance to [him] of any kind in an effort to induce or cause [him] to enter a plea of guilty in this case." (*Id.* at 29). Rossiter now claims that he lied at the change of plea hearing, because he was directed to do so by his counsel. (DE #400-1 at 10). He further claims that we should credit his assertions in his 2255 petition over his previous assertions because his counsel was convicted of stealing money from his clients, and in the words of Rossiter, is a "liar and a thief" who has lost his license to practice law.[1] (DE #400-1 at 6). Even if counsel's reputation for truth and honesty has been sullied due to criminal acts unrelated to Rossiter, that does not make Rossiter (who now claims he lied at his sentencing hearing) any more credible.[2] A defendant's statements given under oath during a plea colloquy are presumed to be true. *United States v. Redmond*, 667 F.3d 863, 870 (7th Cir. 2012).

---

[1] Rossiter asserts that, "[s]urely this Court will agree, an attorney functioning in such a capacity to steal some 1.6 million dollars from his own clients, would readily lie and deceive the defendant as outlined herein." (DE #429 at 11). Rossiter, however, has offered no explanation of what might motivate a defense attorney to lie to his client in order to get the client to plead guilty. If his attorney was motivated by money, taking this case to trial (even if not in his client's best interest) would have proven more lucrative.

[2] Holesinger's criminal activity also does not alone create the need for an evidentiary hearing in this matter, as Rossiter suggests. (DE #401-1 at 8, citing *Armienti v. United States*, 234 F.3 820 (2d Cir. 2000)). In *Armienti*, the petitioner argued that his attorney, who was being investigated during his trial by the same United States Attorney's Office prosecuting his case, suffered a conflict of interest. Rossiter has not made this argument. He has argued only that Holesinger's criminal activities support his claims that Holesinger lied and deceived him.

Rossiter asserts that he is not alleging his counsel made "mere inaccurate predictions" but "intentional fraudulent deceptions." (DE #429 at 6). He offers nothing to support this claim except Holesinger's involvement in criminal activity unrelated to Rossiter's case. In short, because Holesinger is a criminal, Rossiter believes this Court should view what otherwise appears to be an inaccurate prediction as an intentional deception. There is no basis for doing so, and Rossiter is therefore left were merely an inaccurate prediction that cannot sustain his claim of ineffective assistance. Rossiter has not demonstrated either that his attorney's representation fell below an objective standard of reasonableness, or that there was a reasonable probability that, but for his counsel's errors, he would not have pled guilty. *Strickland*, 466 U.S. at 690-94.

Rossiter also argues that counsel was ineffective at the sentencing phase in that he failed to object to both the drug quantities in the presentence investigation report and the denial of acceptance of responsibility. The presentence investigation report was filed with the Court on August 27, 2013. (DE #332). It was accompanied by an addendum containing two defense objections. (DE #333). Counsel asserted that close to half of the drugs were used for personal use, and that he also disagreed with the frequency at which the drug purchases occurred. Counsel also argued that Rossiter should not lose acceptance of responsibility

due to his overdose while on pre-trial supervision because that overdose was a result of his addiction - not a lack of accepting responsibility. On September 5, 2013, counsel for Rossiter filed a seven page sentencing memorandum advocating for a 60-month sentence. (DE #338). The sentencing hearing was scheduled for the next day, but Rossiter's counsel appeared and orally requested additional time to resolve issues prior to the sentencing. The sentencing was then rescheduled for September 19, 2013. (DE #344). On September 19, 2013, once again Rossiter's counsel appeared and orally requested that the hearing be rescheduled to address an issue related to the presentence report. The sentencing was rescheduled for October 2, 2013. A second addendum to the presentence report was filed indicating that the drug quantities had been adjusted to reflect a more accurate drug amount. (DE #350). This was the result of a determination that Rossiter had served more time in jail on previous convictions than had previously been calculated. (*Id.*). At the sentencing hearing, Rossiter's counsel withdrew his objections to the presentence report, indicating that the objections had been resolved. (DE #351, DE #364 at 4). Counsel then argued that a sentence of around 60 months imprisonment was appropriate in this case, for a variety of reasons. (DE # 364 at 8-12). This Court disagreed with counsel and imposed a sentence of 120 months imprisonment. (*Id.* at 14-16). Rossiter argues, however, that even the revised drug

quantity was too high, and Holesinger was ineffective by failing to voice an objection to the revised calculation. Rossiter's assertion is supported by his own self-serving statements alone, but even so, it appears that the very arguments that Rossiter makes here were considered by counsel and account for the reduction in his Guideline range from 210 to 240 months to a range of 168 to 210 months.[3] Rossiter has not demonstrated that counsel's performance was deficient or that he was prejudiced by it. *Strickland*, 466 U.S. at 690-94.

With regard to Rossiter's argument that his counsel was ineffective in failing to pursue his objection to the presentence investigation report's failure to give him credit for acceptance of responsibility, Rossiter's claim cannot succeed. First, Attorney Holesinger did lodge Rossiter's objection, although he withdrew the objection at the final sentencing hearing. Attorney Holesinger practiced in this Court regularly and was quite familiar with this Court's policies and procedures - he would have been well aware that this Court was unlikely to grant any reduction for acceptance

_____

[3] In his memorandum, Rossiter argues that his drug quantities are incorrect because he met a co-defendant several years after the PSR indicates, and that he spent 9 months in prison in 2005, eighteen months in prison during 2007 through 2009, and six months in prison in 2010. (DE #400-1 at 5.) At the sentencing, Attorney Holesinger responded to a question by the Court about the co-defendant's guideline calculations by noting that "that's why we went around and around on those drug amounts, how much gets calculated in, where was Mr. Rossiter at some of these periods in time, what —I mean, this Court knows and the Seventh Circuit has made leeway for these calculations for the presentence individuals to make some kind of calculation. And you can go round and around on that. We reached a number that we can live with as long as the Court considers what's going on – what was going on in Mr. Rossiter's life and led down to this change, this loss - - " (DE #364 at 10).

of responsibility in light of Rossiter's arrest while on pre-trial release.  Thus, even if it was error not to pursue this argument on Rossiter's behalf, Rossiter has not and cannot demonstrate prejudice from this failure.


## Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, a district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate of appealability may issue only if the applicant "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing, a defendant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the motion should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted).

For the reasons set forth above, Rossiter has not stated any grounds for relief under section 2255.  The Court finds no basis for a determination that reasonable jurists would find this decision debatable or incorrect or that the issues deserve encouragement to proceed further.  Therefore, a certificate of appealability will not be issued.

CONCLUSION

For the aforementioned reasons, Rossiter's section 2255 motion is **DENIED** without a hearing.  The Clerk is **ORDERED** to **DISMISS** this case **WITH PREJUDICE**.  The Clerk is **ORDERED** to distribute a copy of this order to Tommy Rossiter, #11869-027, Elkton FCI-FSL, Federal Correctional Institution (FSL), Inmate Mail/Parcels, P.O. Box 10, Lisbon, OH 44432, or to such other more current address that may be on file for the Petitioner.  Further, this Court declines to issue Defendant a certificate of appealability.


**DATED: September 2, 2016**              **/s/ RUDY LOZANO, Judge**
                                          **United States District Court**